UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICK L. WEAVER, | CASE NO. 4:14CV311 |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | Magistrate Judge George J. Limbert |
| BRIAN MOAMIS, *et al.,* | REPORT AND RECOMMENDATION |
| Defendants. | |

This matter is before the undersigned on a motion for summary judgment filed by Plaintiff Patrick L. Weaver ("Plaintiff") on June 19, 2015, and a motion for summary judgment filed by Defendant Brian Moamis ("Defendant"), the only remaining defendant in this case, on June 30, 2015.[1] ECF Dkt. #47; ECF Dkt. #49.  Plaintiff filed a response in opposition to Defendant's motion for summary judgment on July 16, 2015.  ECF Dkt. #52.  On July 21, 2015, Defendant filed a response in opposition to Plaintiff's motion for summary judgment.  ECF Dkt. #53.  Defendant filed a reply in support of his motion for summary judgment on July 29, 2015.  ECF Dkt. #54.  Plaintiff did not file a reply in support of his motion for summary judgment.

For the following reasons, the undersigned recommends that the Court DENY Plaintiff's motion for summary judgment (ECF Dkt. #47) and DENY Defendant's motion for summary judgment (ECF Dkt. #49).

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff was a pretrial detainee at Trumbull County Jail (the "Jail") from September 24, 2012 through April 17, 2013.  ECF Dkt. #49 at 5.  On October 9, 2012, Plaintiff requested that he be allowed to use the phone, and was permitted to leave his cell to place a call.  ECF Dkt. #47 at 2; ECF Dkt. #49 at 5.  While in the day-room pod (the "Pod"), the location where Plaintiff was to place the

---

[1] Plaintiff incorrectly named "Brian Moamis" as a defendant in the various pleadings filed in this case.  However, Defendant Moamis' first name is "David."  *See* ECF Dkt. #23 at n. 1.

call, Plaintiff attempted to pass a book to another inmate. ECF Dkt. #1 at 3; ECF Dkt. #49 at 5. It was a violation of Jail policy to pass items to other inmates in the Pod. ECF Dkt. #49-1 at 1. After witnessing Plaintiff's attempt to pass the book to a fellow inmate, Plaintiff was ordered via the intercom system in the Pod to return to his cell to be locked down. ECF Dkt. #49 at 5.

Plaintiff did not return to his cell to be locked down. ECF Dkt. #49 at 5. Instead, Plaintiff proceeded to argue with Defendant and other corrections officers over the intercom system, and demanded that he be permitted to use the phone. *Id.* At some point during the arguments, Defendant entered the Pod. ECF Dkt. #47 at 2; ECF Dkt. #49 at 6. Following Defendant's entry into the Pod, Plaintiff continued to refuse to comply with orders and refused to return to his cell. ECF Dkt. #49 at 6. After attempting to move Plaintiff in the direction of his cell, Defendant put his arm around Plaintiff's neck to forcibly move him back to his cell. *Id.* Plaintiff continued to refuse to follow orders, and Defendant took Plaintiff to the ground.[2] ECF Dkt. #47 at 2; ECF Dkt. #49 at 6. Plaintiff requested medical attention, and a x-ray showed low-grade bone hypertrophy to the AC joint, but no fracture or dislocation of Plaintiff's left shoulder or left hip. ECF Dkt. #49 at 6-7.

On February 13, 2014, Plaintiff filed the instant case under 42 U.S.C. § 1983, alleging that Defendant used excessive force during the October 9, 2012 altercation described above. ECF Dkt. #1. In two Memorandum Opinion and Orders, dated September 8, 2014 and February 27, 2015, the Court dismissed all defendants in this action other than Defendant Moamis. ECF Dkt. #5; ECF Dkt. #35. Accordingly, the case proceeded with Defendant Moamis as the sole defendant. The Court determined that Plaintiff's claim should be properly analyzed under the Fourteenth Amendment

---

[2]Defendant recalled that Plaintiff attempted to run and that Plaintiff struck him twice during the October 9, 2012 altercation. Plaintiff does not address these allegations in his response to Defendant's motion for summary judgment (ECF Dkt. #52). Since both parties filed motions for summary judgment, the factual allegations made by Defendant will be addressed in the analysis below and afforded the proper weight when considered in conjunction with Plaintiff's motion for summary judgment and Defendant's motion for summary judgment, respectfully. Defendant accepts that, for purposes of his motion for summary judgment, the statement of facts relies on Plaintiff's version of events. ECF Dkt. #49 at 6, n. 2. Likewise, under the proper summary judgment standard, Plaintiff's motion for summary judgment must be considered in the light most favorable to Defendant (as discussed below).

rather that the Eighth Amendment because Plaintiff was a pre-trial detainee at the time of the October 9, 2012 altercation, but noted that "at a minimum, pretrial detainees are guaranteed the same level of protection guaranteed by the Eight Amendment." ECF Dkt. #5 at 3 (citing *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008)).

## II. STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (internal citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir. 1989). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, in order to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Alexander v.*

*CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," but rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir. 2007) (internal citation omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (internal citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir. 2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87; *see also Anderson*, 477 U.S. at 252.

### III. LAW AND ANALYSIS

#### A. Plaintiff's Motion for Summary Judgment

Plaintiff argues that Defendant did not follow jail policies when Defendant entered the Pod without first calling for assistance, and that Defendant had sufficient time to think about calling for assistance prior to entering the Pod. ECF Dkt. #47 at 3. Further, Plaintiff asserts that Defendant used excessive force in violation of Plaintiff's Fourteenth Amendment rights when Defendant placed Plaintiff in a headlock, took him to the ground, and punched Plaintiff while he was on the ground. *Id.* at 4-6. Plaintiff indicates that he suffered bruising on his left shoulder and left hip, and had problems sleeping for forty-six days, which resulted in depression, due to the altercation with Defendant. *Id.* at 4-5.

Defendant asserts that a good faith use of physical force in a prison setting may be necessary to maintain prison security and discipline. ECF Dkt. #49 at 10 (citing *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008)). When discussing the facts of the instant case, Defendant indicates that

Plaintiff was released from his cell to make a phone call, and during the time Plaintiff was released he passed an item to another inmate in violation of Jail policy. Plaintiff then proceeded to argue with corrections officers via intercom when ordered to return to his cell, as admitted by Plaintiff. ECF Dkt. #47 at 4; ECF Dkt. #49 at 11. Defendant maintains that he entered the Pod to bring Plaintiff under control and guide him back to his cell, and that when he entered Plaintiff continued to resist the orders of corrections officers and moved back towards the phones, away from his cell. ECF Dkt. #49 at 11. Indicating that he saw Plaintiff's resistance and movement as aggressive moves, Defendant then attempted to apply physical restraint by taking hold of Plaintiff's neck and taking him to the floor. *Id.* In light of these facts, Defendant asserts that his actions: were in accordance with the policies established by the Jail; were under circumstances in which Defendant reasonably believed force was required; and caused minimal injury to Plaintiff. Further, Defendant contends that he attempted to restore order before using physical force and that when physical force was used he was acting reasonably and in a manner to preserve the safety of himself and fellow corrections officers. *Id.*

Continuing, Defendant cites to *Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010), to support his position that he used reasonable force against Plaintiff. ECF Dkt. #49 at 12. In *Griffin*, the plaintiff began arguing loudly with a nurse who had stated that plaintiff would not be transported to the hospital for treatment of bruises on her back and arms. *Griffin*, 604 F.3d at 951. As a result of the argument, the defendant, a corrections officer, approached the plaintiff and attempted to speak with her about the situation. *Id.* As the plaintiff walked away, the defendant grabbed one of her arms and plaintiff attempted to pull away. *Id.* The defendant then called for an additional corrections officer to assist, and the corrections officers began leading the plaintiff to her holding cell. *Id.* While leading the plaintiff to her cell the plaintiff resisted, and the defendant performed a leg-sweep maneuver to take the plaintiff to the ground. *Id.* at 952. As a result of the maneuver, the non-defendant corrections officer fell on Plaintiff and broke her tibia. *Id.* The defendant moved for summary judgment, and the district court granted the motion. *Id.* The Sixth Circuit determined that the district court did not err in granting the defendant's motion for summary judgment on the 42

-5-

U.S.C. § 1983 claim. *Id.* at 956. It is worth noting that when deciding *Griffin*, the Sixth Circuit indicated that the fact that the plaintiff had engaged in a loud, lengthy, and animated conversation with the nurse gave the defendant a reason to believe that force would be necessary to control the plaintiff. *Griffin*, 604 F.3d at 955.

Defendant cites *Griffin* and asserts that Plaintiff's argument with corrections officers gave Defendant a reasonable basis to believe that force would be necessary to control Plaintiff, regain control of the Pod, and protect the safety of Defendant, other corrections officers, and other inmates. ECF Dkt. #49 at 12. Further, Defendant states that he used less force than was used in *Griffin* and Plaintiff suffered no substantial injury. *Id.* Finally, Defendant maintains that the force used was reasonable and rationally related to the legitimate governmental purpose of restoring order to the Jail. *Id.*

A motion for summary judgment must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87. Although Plaintiff and Defendant agree that no genuine issue of material fact exists in the instant case, there is not a consensus between the parties as to whether Plaintiff attempted to strike, or did in fact strike, Defendant during the October 9, 2012 altercation. ECF Dkt. #47 at 1, 6; ECF Dkt. #53 at 1, 5. Accordingly, the undersigned will address Plaintiff's motion for summary judgment in the light most favorable to Defendant, and Defendant's motion for summary judgment in the light most favorable to Plaintiff, and will address the parties differing claims as to what occurred during the October 9, 2012 altercation.

Plaintiff's motion for summary judgment must fail because Plaintiff has failed to meet the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *See Moldowan*, 578 F.3d at 374 (internal citation omitted). Despite the fact that both Plaintiff and Defendant agree that no genuine issue of material fact exists in the instant case, there is a genuine issue of material fact because the parties do not agree on whether Plaintiff struck or attempted to strike Defendant during the October 9, 2012 altercation. ECF Dkt. #47 at 6; ECF Dkt. #49 at 6; ECF Dkt. #53 at 3. Defendant indicates that Plaintiff struck

-6-

him after Defendant took Plaintiff to the ground. ECF Dkt. #49 at 6. Plaintiff has explicitly stated that he did not strike Defendant. ECF Dkt. #57 at 22. Whether or not Plaintiff struck Defendant is a material fact to this case because Plaintiff alleges that after he broke free from Defendant, Defendant and his fellow correctional officers chased him down, tackled him, held him to the ground, and proceeded to punch him. ECF Dkt. #47 at 6. Plaintiff makes similar statements in his deposition when asked about the October 9, 2012 altercation, stating that he was "tackled back to the ground and punched and kicked."[3] ECF Dkt. #57 at 22. It is unclear from Plaintiff's deposition testimony whether Plaintiff is including Defendant among those who punched and kicked him, but it is clear in Plaintiff's motion for summary judgment that Plaintiff is alleging that Defendant held him to the ground and punched him. *Id.*

Whether or not Defendant punched Plaintiff is material to this case, as is whether Plaintiff struck Defendant before Defendant allegedly struck Plaintiff. Plaintiff is claiming that Defendant used excessive force when attempting to return Plaintiff to his cell, and that Defendant's actions were "wanton, sadistic, and unnecessary." ECF Dkt. #47 at 2. There are issues of material fact still at dispute in this case, namely, whether Plaintiff struck Defendant and whether Defendant struck Plaintiff after Plaintiff had been tackled and effectively subdued. These issues are material because they are directly linked to what level of force Defendant was reasonably able to use against Plaintiff, and whether Defendant employed excessive force that amounted to punishment. *See Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2015 WL 2473447, *6 ("the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" (citing *Graham v. Connor*, 490 U.S. 386, 396, n. 10 (1989)). The issues surrounding the allegation that Defendant struck Plaintiff after taking him to the ground and subduing him are issues of material fact that should be determined by a jury.

---

[3]Plaintiff's deposition testimony contains the only allegation that corrections officers kicked him. Plaintiff's motion for summary judgment only alleges that Defendant punched Plaintiff.

In addition to failing for the above reasons, and because Plaintiff's motion for summary judgment must be considered in light of the facts most favorable to Defendant, Plaintiff's motion for summary judgment fails on the merits. The Sixth Circuit has cautioned that a prison official's decision to use force is entitled to deference, stating:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002). When making a determination of the reasonableness or unreasonableness of the force used by an officer when acting, the Supreme Court of the United States has stated that courts should consider:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; and effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the Plaintiff was actively resisting.

*Kingsley,* 2015 WL 2473447 at *6.

In the instant case, Plaintiff admits in his deposition that he was refusing to obey orders given by Defendant, argued with Defendant via intercom, continued to disobey orders given by Defendant when Defendant entered the Pod, and attempted to escape from officers when they tried to subdue him. ECF Dkt. #57 at 14-19, 21, 45. Although the extent of the argument is not clear from the parties' briefs, it is likely that Plaintiff's choice to engage in an argument with Defendant and other correctional officers alone was enough to lead Defendant to believe that force would be necessary. *See Griffin*, 604 F.3d at 955. Plaintiff moved away from Defendant when Defendant entered the Pod, and has stated that he attempted to flee from Defendant and the additional officers then entered the Pod. ECF Dkt. #49 at 6; ECF Dkt. #57 at 45. Additionally, under Defendant's version of the facts,

Plaintiff broke free from Defendant's initial restraint and struck Defendant before attempting to flee.[4] ECF Dkt. #49 at 6.

Further, Plaintiff was not extensively injured as a result of Defendant's actions. Following the events of October 9, 2012, Plaintiff visited the Jail's doctor complaining of pain in his left hip and left shoulder. ECF Dkt. #47 at 4. After x-raying Plaintiff's left shoulder and left hip, the doctor prescribed Motrin, an over-the-counter non-steroidal anti-inflammatory agent. *Id.* Plaintiff admits that there was no long-term injury, and that his problems related to sleeping due to soreness dissipated after approximately two months. ECF Dkt. #57 at 40-41. Plaintiff also claims that he suffered from depression as a result of Defendant's actions and the loss of sleep, and was prescribed Zoloft. ECF Dkt. #47 at 5. However, Plaintiff was unsure when questioned as to whether he was being treated for depression prior to the October 9, 2012 altercation. ECF Dkt. #57 at 42-43. Whether or not Plaintiff was being treated for depression prior to October 9, 2012, Plaintiff does not assert that the depression lasted longer than the forty-six days that Plaintiff was sore and had trouble sleeping on his left side. Plaintiff's injuries that resulted from Defendant's actions were not so serious as to warrant a finding that Defendant used an unreasonable amount of force.

---

[4]Plaintiff maintains that he did not strike or attempt to strike Defendant. Defendant states that he was struck by Plaintiff. Defendant's position is supported by incident reports, Defendant's affidavit, the use of force report prepared after the October 9, 2012 altercation, statements given by four corrections officers who witnessed or responded to the October 9, 2012 altercation, and an email prepared by Assistant Warden John T. Buch. ECF Dkt. #47-12; ECF Dkt. #47-13; ECF Dkt. #49-1 at 1, 3-9. Plaintiff's assertion that he did not strike Defendant is supported by his deposition, grievance reports and requests for assistance filed by Plaintiff, and a letter sent by inmate Daniel P. Good claiming to have witnessed the October 9, 2012 altercation between Plaintiff and Defendant. ECF Dkt. #47-8; ECF Dkt. #47-9; ECF Dkt. #47-11; ECF Dkt. #57 at 22. The letter sent by inmate Good contains a version of events that is very different than the versions provided by Plaintiff and Defendant, including allegations that the three correctional officers, including Defendant, took Plaintiff back to his cell and then proceed to violently beat him, at which point Assistant Warden Buch appeared and joined the officers in the beating. ECF Dkt. #57 at 22. Plaintiff has acknowledged that inmate Good's letter differs from the actuality of the events that led to the filing of the instant case. *Id.* at 32-34.

Under Defendant's version of the facts, Defendant limited the amount of force used when restraining Plaintiff. Plaintiff was non-compliant and was attempting to move away from Defendant. Defendant placed Plaintiff in a headlock and took him to the floor. Plaintiff does not assert that he was in compliance with Defendant's orders, admits that he was actively resisting Defendant's orders, and admits that he was moving away from Defendant in a direction other than the direction back to his cell. ECF Dkt. #57 at 16-22, 44-45. Plaintiff does not provide any examples of alternative methods Defendant should have used to restrain Plaintiff that would have constituted a lesser use of force. While it is unlikely that Plaintiff was posing a large security risk, Plaintiff was engaging in arguments with Defendant and other correctional officers and repeatedly refusing to obey commands. The facts of this case are similar to *Griffin*, in which the Sixth Circuit held that arguments may be enough to give rise to the belief in a corrections officer that force may be necessary. *Griffin*, 604 F.3d at 955. The Sixth Circuit's ruling in *Griffin* supports a finding that by engaging in an argument and refusing to obey orders, Plaintiff was posing a security risk that warranted the use of force. Likewise, the ruling in *Griffin* supports a finding that Defendant's perception of a threat was warranted. Additionally, Plaintiff had already proved that he was unwilling to obey orders or cooperate at the time Defendant entered the Pod, thus providing Defendant with good reasons to think that Plaintiff would continue to be non-compliant.

Additionally, Plaintiff has admitted that he was actively resisting Defendant. ECF Dkt. #57 at 16-22, 44-45. The Trumbull County Adult Justice Center Policies and Procedures state that when a prisoner is actively resisting a Level 3 response to resistance is appropriate and compliance techniques may include the use of chemical weapons, use of an automatic stun device, use of restraints, forced movement, forcing an inmate's limbs behind his back, forcing an inmate down on the floor or against the wall, or using other forms of rough physical force. ECF Dkt. #49-1 at 21. Defendant's version of the facts indicates that Plaintiff struck Defendant. Plaintiff's strike would shift Defendant's appropriate response from a Level 3 response to a Level 4 response because Plaintiff is posing a threat of bodily harm. Defendant's action of taking Plaintiff to the ground complied with normal Level 3 responses to resistance. Level 4 responses allow defensive tactics including the use of hard fists. *Id.* Under Defendant's version of the facts, Plaintiff struck

-10-

Defendant, and thus even if Defendant did reasonably use his fists against Plaintiff, that use would be in compliance with the Jail's policies.

Plaintiff has failed to demonstrate that he is entitled to summary judgment. For the above reasons, the undersigned recommends that the Court DENY Plaintiff's motion for summary judgment.

### B. Defendant's Motion for Summary Judgment

In his motion for summary judgment, Defendant correctly asserts that the Fourteenth Amendment protects a pre-trial detainee from the use of physical force that amounts to punishment. ECF Dkt. #49 at 10 (citing *Kingsley*, 2015 WL 2473447, at *6). Under 42 U.S.C. § 1983, a pretrial detainee must show that the force purposefully and knowingly used against him was objectively unreasonable to prevail on an excessive force claim, as determined from the prospective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396.

Defendant argues that the undisputed facts of the case establish that Plaintiff violated Jail policy by passing an item to another inmate, then disobeyed orders to return to his cell given by corrections officers. ECF Dkt. #49 at 11. Defendant entered the Pod and Plaintiff continued to disregard his orders. *Id.* Defendant then placed Plaintiff in a headlock and took him to the floor. Defendant and Plaintiff do not agree as to whether Plaintiff struck Defendant, and Defendant does not address Plaintiff's allegations that Defendant began to punch Plaintiff after Plaintiff was taken to the ground. Defendant maintains that these circumstances presented a situation in which he reasonably believed force was required, and that belief was objectively reasonable.

Defendant's motion for summary judgment must fail because there are issues of material fact that are in dispute. Plaintiff claims that Defendant, along with fellow correctional officers, held Plaintiff to the ground and punched him. ECF Dkt. #47 at 6. Although Defendant acknowledges that for the purposes of summary judgment Defendant must rely on the facts in the light most favorable to Plaintiff, Defendant does not address the allegation that Defendant began to strike Plaintiff after Plaintiff was taken to the ground. There were multiple corrections officers present when Plaintiff was taken to the ground, and Plaintiff alleges that all of the correction officers present, including Defendant, began to punch him after he was tackled to the ground. ECF Dkt. #57 at 22.

Plaintiff's allegations that Defendant began to strike him after Plaintiff had been taken to the ground are issues of material fact.  Plaintiff and Defendant agree on the facts of this case up until Defendant had placed Plaintiff in a headlock and taken him to the ground.  Under Plaintiff's version of events, after Plaintiff was taken to the ground he "hopped up" and tried to run back to his cell, and was then tackled by two correctional officers who then proceeded, along with Defendant, to strike Plaintiff while he was on the ground.  ECF Dkt. #57 at 22.  Defendant provides a very different version of the altercation.  Under Defendant's versions of events, after Defendant took Plaintiff to the ground, Plaintiff broke free and struck Defendant, then fled from the responding correctional officers.  ECF Dkt. #49 at 6.  Defendant does not address what occurred once Defendant and the responding correctional officers ultimately secured Plaintiff beyond indicating that it took three correctional officers to return Plaintiff to his cell.  *Id.*

The facts surrounding Plaintiff's allegations that Defendant struck him after he had been taken to the ground are material to this case.  A pretrial detainee must show that the force purposefully and knowingly used against him was objectively unreasonable to prevail on an excessive force claim, as determined from the prospective of a reasonable officer on the scene.  *Graham*, 490 U.S. at 396.  As discussed above, Defendant taking Plaintiff to the ground was a reasonable use of force under the circumstances.  However, correctional officers striking a detainee after he has been put to the ground and effectively subdued, especially when there are multiple corrections officers present, is not a reasonable use of force because a reasonable officer should not think that striking a detainee who no long poses any threat is reasonable.  Additionally, if Plaintiff threw the first punches, Defendant may have been justified in striking Plaintiff, so long as Plaintiff had not been subdued, because Plaintiff's punches would likely have escalated the situation to one in which Defendant believed that Plaintiff posed a threat of bodily harm and Defendant felt it necessary to defend himself.  Alternatively, it may be the case that Plaintiff struck Defendant, but was never struck himself, as apparently claimed by Defendant since Defendant does not address what occurred after Plaintiff was subdued.  Defendant fails to address these issues of material fact that are important in determining the validity of Plaintiff's claims.

Additionally, Defendant asserts that he is entitled to qualified immunity. ECF Dkt. #49 at 13. The Supreme Court of the United States has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800,818 (1982) (internal citations omitted). A defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Quigley v. Tuong Vinh* Thai, 707 F.3d 675, 680 (6th Cir. 2013) (citing *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)). Courts may choose to analyze either prong first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Defendant argues that he is entitled to qualified immunity because Plaintiff cannot establish that he was subjected to excessive force or that Defendant's conduct violated a clearly established right. ECF Dkt. #49 at 13. Defendant asserts that while an individual's right to be free from excessive force has been clearly established, so has a corrections officer's right to respond with force in order to bring an inmate under control when an inmate is actively fighting with officers. ECF Dkt. #49 at 14. Defendant cites several cases supporting his position that force is appropriate when an inmate refuses to follow orders given by correctional officers. *Id.* (internal citation omitted). Continuing, Defendant asserts that he used Level 2 and Level 3 compliance techniques during the October 9, 2012 altercation as described in the policies set forth by the Jail. *Id.* at 15. Finally, Defendant notes that the standard for force used against a pretrial detainee was only recently established by *Kingsley*, and that until that decision, which was decided after the October 9, 2012 altercation, the Sixth Circuit adjudicated use of force claims under a "shocks the conscience" standard. *Id.* Finally, Defendant asserts that there is no evidence that he acted maliciously or sadistically with the purpose of causing harm to Plaintiff, and therefore did not violate Plaintiff's clearly established rights. *Id.*

As was the case with Defendant's arguments regarding Plaintiff's excessive force claim, Defendant fails to address the allegations made by Plaintiff insofar as they assert that Defendant

began striking Plaintiff once Plaintiff had been taken to the ground by the correctional officers who responded to the Pod.  Defendant cites several cases upholding the use of force by corrections officers when inmates fail to follow orders.  ECF Dkt. #49 at 14.  These cases support Defendant's arguments as to using force when placing Plaintiff in a headlock and taking him to the ground.  However, Defendant has not addressed Plaintiff's allegations regarding Defendant's conduct once Plaintiff had been tackled by the corrections officers.

Defendant correctly indicates that an individual's right to be free from excessive force has been clearly established.  ECF Dkt. #49 at 14.  The qualified immunity argument raised by Defendant must rely on the facts in the light most favorable to Plaintiff.  Instead of responding to the factual allegations made by Plaintiff asserting that Defendant began striking Plaintiff after Plaintiff had been taken to the ground, Defendant's qualified immunity argument accepts the facts as provided by Defendant.  Defendant does not respond to these factual assertions made by Plaintiff, and does not attempt to argue that Plaintiff was not subjected to excessive force under the facts in the light most favorable to Plaintiff.

For these same reasons, Defendant's argument that on October 9, 2012 the Sixth Circuit employed a shocks the conscience standard in excessive force cases, and that this standard is more deferential to corrections officers than the current standard, is not persuasive.  Under Plaintiff's version of events, a group of corrections officers, including Defendant, tackled him and then proceeded to hold him down and punch him while he was on the ground.  Defendant provided no law or argument indicating that these actions would not be sufficiently egregious to meet the shocks the conscience standard.  Based on these reasons, Defendant is not entitled to qualified immunity.

Defendant has failed to demonstrate that he is entitled to summary judgment.  For the above reasons, the undersigned recommends that the Court DENY Defendant's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court DENY Plaintiff's motion for summary judgment (ECF Dkt. #47) and DENY Defendant's motion for summary judgment (ECF Dkt. #49).


Date: November 20, 2015                    */s/ George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).